OPINION OF THE COURT
Robert C. McGann, J.
The issue presented at this special proceeding is whether *1015 the respondent, a person with active tuberculosis (TB), should be forcibly detained in a hospital setting to allow for the completion of an appropriate regime of medical treatment.
THE LAW
Due to a resurgence of tuberculosis, New York City recently revised the Health Code to permit the detention of individuals infected with TB who have demonstrated an inability to voluntarily comply with appropriate medical treatment. Thus, effective April 29, 1993, New York City Health Code § 11.47 was amended to give the Commissioner of Health the authority to issue an order for the removal or detention in a hospital or other treatment facility of a person who has active tuberculosis. The prerequisite for an order is that there is a substantial likelihood, based on the person’s past or present behavior, that the individual cannot be relied upon to participate in or complete an appropriate prescribed course of medication or, if necessary, follow required contagion precautions for tuberculosis. Such behavior may include the refusal or failure to take medication or to complete treatment for tuberculosis, to keep appointments for the treatment of tuberculosis, or a disregard for contagion precautions.
The statute provides certain due process safeguards when detention is ordered. For example, there are requirements for an appraisal of the risk posed to others and a review of less restrictive alternatives which were attempted or considered. Furthermore, there must be a court review within five days at the patient’s request, and court review within 60 days and at 90-day intervals thereafter. The detainee also has the right to counsel, to have counsel provided, and to have friends or relatives notified. (See, Andrias, The Criminal Justice System and the Resurgent TB Epidemic, 9 Grim Just 2 [spring 1994].)
BACKGROUND
The amendment to the Code stems from the recent declaration by the Board of Health acknowledging that the City of New York is in the midst of a tuberculosis crisis characterized by new strains of the disease. In general, tuberculosis is known to be a respiratory illness which is transmitted when airborne TB bacilli are expelled from the lungs of an infectious person and are inhaled by an exposed individual. When the bacilli are transmitted to another, they may either remain inactive or become active. Although most remain in the *1016 inactive state, a person in good health exposed to the infection has a 10% lifetime chance of developing active TB. Those with a compromised immune system, however, have a much higher risk of developing the active disease.
It is when the body’s immune system fails to hold the organisms in check that they start to multiply resulting in an active case of tuberculosis. The symptoms are persistent cough, loss of appetite, loss of weight, fever, chills and sweats. When the disease initially becomes active, it is often highly infectious, that is, capable of being transmitted to others. A person with infectious TB can normally be rendered noninfectious within days to weeks. Thereafter, the individual must continue to take a full course of medication, generally for six to nine months, to cure the active tuberculosis. If a patient stops taking the appropriate medication before the expiration of these six to nine months, however, that patient will likely become infectious again. Moreover, when the medical regime is interrupted, and the TB resurges in an infectious state, the organisms in the individual’s system may eventually mutate and become resistant to the original drugs prescribed. The more times medication is suspended, the more likely is the chance of developing a strain of tuberculosis which is resistant to drugs.
These multidrug resistant strains of TB stay infectious and active over longer periods of time and therefore require long-term treatment with more toxic drugs. By comparison, the standard treatment for nonresistant TB consists of administering two drugs, isoniazid and rifampin, for approximately six months until the patient is cured. The cure rate for those completing this treatment is considered 100%. Multidrug resistant tuberculosis, on the other hand, is resistant to these drugs and to as many as seven other antibiotics. To obtain a cure rate of 60% or less, toxic drugs must be maintained over a minimum period of 18 to 24 months. (See, Rothenberg and Lovoy, Something Old, Something New: The Challenge of Tuberculosis Control in the Age of AIDS, 42 Buff L Rev 715 [1994].) The most critical characteristic of these multidrug resistant strains is that they are capable of being transmitted directly to others during the infectious stage.
Because of an increase in reported incidences of multidrug resistant strains of tuberculosis, the Department of Health issued a resolution proclaiming that the City was in the midst of an epidemic of tuberculosis. The Board recognized that the failure of a tuberculosis patient to complete an effective course *1017 of therapy creates the likelihood of relapse and facilitates development of drug resistant strains of the disease. The Board therefore decreed that the refusal or failure of tuberculosis patients, whether or not infectious, to complete a course of antituberculosis therapy creates a significant threat to the public health. Accordingly, the New York City Health Code was amended to allow the Commissioner to issue orders of detention. Where an order is issued, the Commissioner must make an application to the court for enforcement. In the court proceeding, the Commissioner must demonstrate by clear and convincing evidence the particularized circumstances constituting the necessity for the detention.
On March 9, 1995, the Commissioner issued an order of detention for the respondent. At the proceeding held before me for the purpose of enforcing the order, the petitioner relied upon the testimony of Doctor Gabriel Feldman, and numerous hospital records regarding the respondent. The respondent, Ms. R, represented by counsel, testified on her own behalf and called three witnesses in support of her request to be released from detention. Based on the credible and competent evidence, the following facts were adduced.
FINDINGS OF FACT
On November 30, 1993 the respondent, a 33-year-old female, was admitted to the Queens Hospital Center with pneumonia under the name of Marie C. exhibiting shortness of breath. A chest x-ray determined that she was suffering from inflammation in the upper right lobe, a classic indicator of tuberculosis. A sputum smear confirmed that she had an active, infectious case of TB. When the patient was interviewed, it was discovered that she had children who lived with her mother. She herself lived with them on occasion but also resided with various friends. She was informed of the consequences of tuberculosis and necessity of completing the appropriate medication to control the disease. Finally, she was recommended by the Department of Health to be a participant in Directly Observed Therapy, a program which involves the Department sending personnel to a patient’s residence to observe and verify the patient’s compliance with medication treatment. On December 4, however, the respondent left the hospital against medical advice prior to being rendered noninfectious. From December through February of 1994, she could not be contacted through her last known address. Moreover, despite *1018 several contacts with the respondent’s mother, the mother did not know of her daughter’s whereabouts, and was thus unable to provide any help in securing the proper medication for her daughter. In May, after numerous failed attempts at trying to contact the patient, the Department closed her case labeling the file, "Unable to Locate.”
On May 31, 1994, the respondent checked into the emergency room at the Queens Hospital Center with breathing difficulties but checked out against medical advice. On June 6, 1994, she was readmitted with fever and chills under the name of Antoinette R. A sputum smear indicated a heavily positive tuberculosis infection. A chest x-ray of the right upper lobe of her lung showed cavitation present, which suggested a worsening of her condition. As a patient, the respondent was informed about tuberculosis pathology and control, she responded to the instructions in an uncooperative manner. In spite of efforts to conceal her identity, it was eventually discovered that the patient, Antoinette R., was the same person who had been unsuccessfully treated under the name of Marie C. She was then issued an order by the Commissioner of Health requiring her detention on June 11, 1994. On July 13, 1994, she was served with a Commissioner’s order to participate in Directly Observed Therapy which commenced upon release from the hospital on July 18.
Thereafter, between July 19 and July 31, she kept five of her eight scheduled appointments but kept no appointments after that date. On the occasions of Directly Observed Therapy, the respondent threw out medicine in the presence of the public health advisor assigned to her case. She was subsequently noncompliant and lost to medical followup despite numerous attempts to locate her at shelters and her last known address. Five months after her release from the hospital, her case file was again closed as "Unable to Locate.”
On January 31, 1995 the respondent was readmitted to the hospital under the name of Chastity C. Her physical examination indicated a worsening of condition with extensive cavitary infiltrates in the right upper lobe with what appeared to be bronchogenic spread into the right middle and lower lobe on the right and left lungs. These findings were consistent with a reactivation of tuberculosis with bronchogenic spread. A sputum smear was collected which confirmed the diagnosis of infectious tuberculosis. A public health advisor again explained the importance of taking and completing medication and discussed the possibility of participating in Directly Ob *1019 served Therapy. The respondent agreed to participate and gave her mother’s residence as a place of contact but refused to provide a phone contact. On March 8, however, once again it was discovered that the patient was the same person who under different identities refused to participate in out-patient treatment. The order of detention, currently before the court, was subsequently issued on March 9 by the Commissioner of Health. The respondent is presently diagnosed as having active tuberculosis which has been rendered noninfectious. Since it is not of the drug resistant type, the estimated date of completion of treatment is in October 1995, seven months from now.
The mother of the respondent lives in a private home with four of her grandchildren and a newborn great-grandson, the grandchild of the respondent. The mother is willing to take the respondent into her home and provide cooperation should she be released from the hospital. Over the past two months the mother has visited her daughter on several occasions and talked with her over the phone on a daily basis. The mother has noticed a change in attitude in the respondent, that is, she is not as hostile. The mother attributes this change to the respondent’s acceptance of religion. The respondent also contends that her attitude has been transformed and credits religion as her motivation. Since being detained at the hospital, she has joined various out-patient programs and attended parenting meetings. A nurses aide and the head nurse, who attend to the medical needs of the respondent, both verify that there has been an improvement in the respondent’s demeanor. She is now cooperative while taking her medicines and on occasions has independently approached the nursing staff to request her medicines. Relying on her "change in attitude,” the respondent opposes the order of detention and again requests the option of participating in Directly Observed Therapy to be conducted at her mother’s place of residence.
CONCLUSION
The petitioner’s request for enforcement of the order of the Commissioner is granted. The petitioner has demonstrated through clear and convincing evidence the respondent’s inability to comply with a prescribed course of medication in a less restrictive environment. (See, Matter of City of New York v Doe, 205 AD2d 469.) The respondent has repeatedly sought medical treatment for the infectious stages of the disease and *1020 has consistently withdrawn from medical treatment once symptoms abate. She has also exhibited a pattern of behavior which is consistent with one who does not understand the full import of her condition nor the risks she poses to others, both the public and her family. On the contrary, she has repeatedly tried to hide the history of her condition from medical personnel. Although the court is sympathetic to the fact that she has recently undergone an epiphany of sorts, there is nothing in the record which would indicate that once she leaves the controlled setting of the hospital she would have the self-discipline to continue her cooperation. Moreover, her past behavior and lack of compliance with out-patient treatment when her listed residence was her mother’s house makes it all the more difficult to have confidence that her mother’s good intentions will prevail over the respondent’s inclinations to avoid treatments. In any event, the court will reevaluate the progress of the respondent’s ability to cooperate in a less restrictive setting during its next review of the order in 90 days.
Accordingly, the respondent shall continue to be detained in a hospital setting until the petitioner or the court determines that the respondent has completed an appropriate course of medication for tuberculosis, or a change in circumstances indicates that the respondent can be relied upon to complete the prescribed course of medication without being in detention. The petitioner is further directed, pursuant to New York City Health Code § 11.47 to apply to the court within 90 days for authorization to continue respondent’s detention.